**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-24914-KMM

NORTH SHORE MEDICAL
CENTER, INC., *et al.*,

    Plaintiffs,

v.

CIGNA HEALTH & LIFE
INSURANCE CO.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Cigna Health & Life Insurance Co.'s ("Defendant" or "Cigna") Motion to Dismiss. ("Mot.") (ECF No. 25). Plaintiffs North Shore Medical Center, Inc., Lifemark Hospitals of Florida, Inc. d/b/a Palmetto General Hospital, Delray Medical Center, Inc., Good Samaritan Medical Center, Inc., Palm Beach Gardens Community Hospital, Inc. d/b/a Palm Beach Gardens Medical Center, St. Mary's Medical Center, Inc., West Boca Medical Center, Inc., and Coral Gables Hospital, Inc. (collectively, "Plaintiffs" or "Hospitals") filed a response in opposition. ("Resp.") (ECF No. 26). Defendant filed a reply. ("Reply") (ECF No. 27). The Motion is now ripe for review.

**I.   BACKGROUND**[1]

This case arises under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Am. Compl. ¶ 26. Each Plaintiff Hospital is a Florida corporation with its principal place of business

---

[1] The following background facts are taken from the Amended Complaint ("Am. Compl.") (ECF No. 22) and are accepted as true for purposes of ruling on this Motion to Dismiss. *Fernandez v. Tricam Indus., Inc.*, No. 09-22089-CIV-MOORE/SIMONTON, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009).

in Florida. *Id.* Defendant, a national health insurer, is a Connecticut corporation with its principal place of business in Connecticut. *Id.* ¶¶ 26, 30. Plaintiffs plead damages in excess of the $75,000 amount in controversy threshold requirement for diversity jurisdiction. *Id.* ¶ 27.

The Hospitals participate in Defendant's insurance network for some products, however the claims giving rise to this action involve services rendered to Defendant's insureds ("Cigna Members") who are enrolled in health insurance plans or products in which the Hospitals do not participate. *Id.* ¶ 39. Thus, the Hospitals "were 'out-of-network' providers with Cigna when they rendered the services that underpin the [claims] at issue in this lawsuit." *Id.* ¶ 41. Despite their out-of-network status, the Hospitals provided both emergency medical care and authorized non-emergent medical care to Cigna Members in good faith, as required by federal and Florida law, and based upon the promises and course-of-dealing between the parties. *Id.* ¶¶ 42–43. The claims at issue are claims for reimbursement submitted by the Hospitals to Cigna for both emergent medical services ("Emergent Claims") and non-emergent medical services ("Non-Emergent Claims") provided to Cigna Members. *Id.* ¶¶ 7–9. For several years, and expiring on December 31, 2018, "Cigna had an agreement with the Hospitals to reimburse out-of-network services rendered by the Hospitals at 75% of the Hospitals' billed charges." *Id.* ¶ 11. After their contractual agreement expired and since January 1, 2020, Cigna has "unilaterally applied an improper discount to its payments to the Hospitals for the emergency medical care and authorized non-emergent care they provided to Cigna Members." *Id.* ¶ 48. Cigna has paid "rates less than the usual and customary [("U&C")] charges (i.e., fair market value) for the services [provided] as measured by the community where they were performed." *Id.* ¶ 50.

Plaintiffs bring six causes of action against Defendant: Violation of Florida Statute § 627.64194—Emergent Claims (Count I), *see id.* ¶¶ 68–82; Unjust Enrichment—Emergent

2

Claims (Count II), *see id.* ¶¶ 83–96; *Quantum Meruit*—Emergent Claims (Count III), *see id.* ¶¶ 97–105; Promissory Estoppel—Non-Emergent Claims (Count IV), *see id.* ¶¶ 106–116; Unjust Enrichment—Non-Emergent Claims (Count V), *see id.* ¶¶ 117–128; and *Quantum Meruit*—Non-Emergent Claims (Count VI), *see id.* ¶¶ 129–137.  Plaintiffs seek monetary damages as to all Counts and declaratory judgment (1) requiring Cigna to "reimburse the Hospitals at rates equaling the fair market value of the services rendered on all future claims resulting from the Hospitals' provision of emergency medical services to Cigna members" and (2) establishing the "proper methodology for calculating the fair market value of emergency medical services rendered." *Id.* at 27–28.

Now, Defendant moves to dismiss Plaintiffs' Amended Complaint for failure to meet the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See generally* Mot.; Fed. R. Civ. P. 8, 10, 12(b)(6).

## II.   LEGAL STANDARD

### A.   Rules 8 & 10

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8(a)(2) "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citation and quotation marks omitted).  Federal Rule of Civil Procedure 10(b) provides that each claim shall be "limited as far as practicable to a single set of circumstances" and "[i]f doing so would promote clarity, each claim founded on a separate transaction or

occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b).  The Eleventh Circuit has explained that Rules 8 and 10:

> [W]ork together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Davis*, 516 F.3d at 980, n.57 (internal citation omitted).

### B.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted).  The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007).  A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. DISCUSSION

Defendant first moves to dismiss Plaintiffs' Amended Complaint because it provides no detail about any individual claims or services. Mot. at 5–9. Second, Defendant argues that Plaintiffs' claims for unjust enrichment and *quantum meruit* fail because (a) Plaintiffs have not pled that they conferred a benefit upon Cigna by virtue of providing emergency or non-emergency services to Cigna Members; (b) as it relates to emergency services, even if Cigna received a direct benefit Plaintiffs have not alleged that that Cigna voluntarily accepted that benefit; and (c) as it relates to non-emergency services, Plaintiffs cannot establish that it is inequitable for Cigna to retain any alleged benefits "because Cigna is not obligated to render non-emergency healthcare services to its insureds, much less via out-of-pocket providers." *Id.* at 9–11. Third, Defendant argues that Plaintiffs' promissory estoppel claim fails because (a) "Plaintiffs do not allege that Cigna affirmatively promised to pay for any of [the] services, much less at any particular rate"; (b) "Plaintiffs do not allege that Cigna promised to pay the specific rate they now seek"; and (c) "Plaintiffs fail to specifically allege what Cigna actually promised, the date of the promise, who at Cigna made the promise, and who accepted the promise." *Id.* at 11–14. Finally, Defendant argues that Plaintiffs' request for declaratory judgment should be dismissed because (a) Florida law does not require that Cigna pay "fair market value" for emergency services; (b) a request for declaratory judgment as to future rights cannot survive a motion to dismiss; and (c) unlike the other causes of action, Plaintiffs' request for declaratory judgment is not limited to out-of-network Cigna Members. *Id.* at 14–16.

In response, Plaintiffs argue that Rule 8 does not require Plaintiffs to individually plead each claim for reimbursement that underlie their legal claims, and Defendant already possesses the claim-specific information which was produced in Plaintiffs' initial disclosures. Resp. at 5–9.

5

Regarding the claims for unjust enrichment and *quantum meruit*, Plaintiffs argue that (a) Cigna did receive a benefit when the Hospitals provided emergency services to Cigna members; (b) "Cigna's acceptance of the benefit was plainly voluntary, as it has voluntarily sold health insurance policies providing coverage for emergency care"; and (c) because Cigna received a benefit, "Cigna's continued retention of the benefit without paying fair value would be inequitable." *Id.* at 10–13. Regarding the promissory estoppel claim, Plaintiffs argue that when Cigna "affirmatively authorized" or "represented that the services were covered and pre-authorization was not required for the services requested," Cigna was aware that "the Hospitals expected to be paid a fair market rate" and therefore "Cigna impliedly represented that the Hospitals would be reimbursed for the fair market value of the services." *Id.* at 14–16. Finally, Plaintiffs argue that "the declaratory judgment sought would apply only to future claims—like the Emergent Claims in this case—for which Cigna is required to pay U&C" which is defined as "the 'fair market value of the services provided.'" *Id.* at 16–19. The Court addresses each argument in turn below.

### A.   Rule 8 and 10 Pleading Requirements

Defendant argues that Plaintiffs' Amended Complaint fails to provide any facts that would allow Defendant to identify the individual claims or services for which Plaintiffs allege that Defendant did not reimburse them at "fair market value" for their services. Mot. at 6. Specifically, "Plaintiffs do not identify any dates of services, the type of treatment provided, which Hospital provided it, the plan or policy that covered the claim, how much the Hospital billed the plan or policy, how much Cigna deemed covered under the plan or policy, how much Cigna ultimately paid (after patient cost-share), or how much more the Hospital believes it is owed on each claim." *Id.* According to Defendant, this is "particularly problematic given Plaintiffs' group pleading" because "it is impossible to discern which Hospitals actually provided the services at issue and

therefore have standing to sue." *Id.* at 7.  Defendant argues that allowing Plaintiffs to resolve their pleading defect through discovery "would sanction a moving target" and "Cigna should not have to wait for Plaintiffs' discovery responses to determine whether each Plaintiff has standing to bring each of its causes of action." *Id.* at 7–8.

Plaintiffs argue that they have met the Rule 8 pleading standard by pleading that (1) "the Hospitals are out-of-network providers which have treated Cigna's patients"; (2) "Cigna has statutory and common law obligations to reimburse the Hospitals for that treatment at rates equaling U&C"; (3) "Cigna has breached those obligations by systematically reimbursing claims at rates below U&C"; and "the breaches encompass claims for reimbursement resulting from more than 500 separate patient encounters occurring since January 1, 2020." Resp. at 6–7.  Plaintiffs argue that "the detail Cigna seeks is non-essential" because "the statutory and common law duties allegedly breached apply across the board, regardless of the specific plan or claim." *Id.* at 8. Further, Plaintiffs argue that they have produced claim-specific information as part of their initial disclosures, so Defendant "is indisputably on notice of the claims alleged." *Id.*  Finally, Plaintiffs argue that "because Cigna continually and systematically underpays claims for reimbursement, additional illegally underpaid claims accrue on a near-daily basis" and Defendant's "attempt to freeze the contents of the claims set by compelling the Hospitals to detail each individual patient service and reimbursement in their pleading is nothing more than an attempt to avoid accountability for its ongoing unlawful underpayments." *Id.* at 8–9.

Courts in the Eleventh Circuit have found complaints that lack sufficient factual allegations, such as the identity of the patients, services performed, and dates of service, fail to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. *See, e.g.*, *RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-CV-80171-ROSENBERG/REINHART, 2018 WL 6110998,

at *5 (S.D. Fla. Nov. 20, 2018) ("Plaintiffs' failure to include these basic and necessary facts mandates dismissal . . . ."); *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, No. 8:14-cv-211-T-30MAP, 2014 WL 5420801, at *2 (M.D. Fla. Oct. 22, 2014) ("The Second Amended Complaint fails to comply with the requirements of Rules 8 and 10 because it does not provide sufficient factual allegations to put Aetna and the Court on notice of the specific factual basis for each claim.  Specifically, the Second Amended Complaint does not provide information as to the identity of the patients for whom the procedures were performed, the specific ERISA plans that covered each patient, the terms of the plan that Aetna allegedly violated, or the dates on which the procedures were performed.").

      Here, Plaintiffs' failure to include basic and necessary facts, such as patient identification numbers, services performed, dates of service, and—more importantly in the context of multiple plaintiffs—which Hospital(s) provided the services, makes it impossible for Defendant to assess the validity of Plaintiffs' claims and whether each named Plaintiff has standing to sue and for which causes of action to formulate a responsive pleading.  *See RMP Enters.*, 2018 WL 6110998, at *2 (finding that the plaintiffs failed to sufficiently allege standing where multiple plaintiffs referred to themselves collectively throughout the compliant).  Plaintiffs' argument that they have produced claim-specific information as part of their initial disclosures fails because, as Defendant argues in its reply brief, "Plaintiffs' initial disclosures show only three Hospitals have non-emergency claims" and "Plaintiffs' initial disclosures do not identify the types of treatment provided or corresponding procedural codes—information essential to identify the actual services rendered."  Reply at 4.  Further, Plaintiffs' argument that Defendant is "attempt[ing] to freeze the contents of the claims set," *see* Resp. at 9, is unpersuasive.  At a minimum, Plaintiffs can provide additional factual support for the "more than 500 separate patient encounters occurring since

8

January 1, 2020," *see* Resp. at 7, on which the Complaint is predicated, and later move to amend their Compliant to add additional claims as necessary as discovery progresses. *See United Surgical Assistants*, 2014 WL 5420801, at *3. Finally, Plaintiffs' reliance on *Florida Emergency Physicians Kang & Associates, M.D., Inc. v. United Healthcare of Florida, Inc.*, 0:20-cv-60757-WPD (ECF No. 68) (S.D. Fla. Mar. 16, 2021), is also unpersuasive. *See* (ECF No. 31). In *Florida Emergency Physicians*, the Court allowed the plaintiffs' complaint to proceed in the absence of claim-specific information, however, there is no discussion of any standing concern and the Court found that "there is no dispute that the claims for benefits were covered by the relevant health plan." *See Fla. Emergency Physicians*, 0:20-cv-60757-WPD (ECF No. 68) at 8.

Accordingly, the Court finds that dismissal of the Complaint without prejudice is warranted, with leave to amend to include an exhibit providing more claim-specific information identifying the treating Hospital, patient identification number, date of service, treatment provided, any applicable plan or policy providing coverage, payment received from Cigna, and alleged amount owed. Such an exhibit may be filed under seal upon appropriate motion to protect personally identifiable information.

### B. Unjust Enrichment and *Quantum Meruit* Claims

Defendant argues that Plaintiffs' claims for unjust enrichment (Counts II and V) and *quantum meruit* (Counts III and VI) fail because (1) Plaintiffs have not pled that they conferred a direct benefit upon Cigna; (2) as it relates to emergency services (Counts II and III), even if Cigna received a direct benefit Plaintiffs have not alleged that that Cigna voluntarily accepted that benefit; and (3) as it relates to non-emergency services (Counts V and VI), Plaintiffs cannot establish that it is inequitable for Cigna to retain any alleged benefit "because Cigna is not obligated to render non-emergency healthcare services to its insureds, much less via out-of-pocket

providers." Mot. at 9–11. Plaintiffs argue that (1) Cigna did receive a benefit when the Hospitals provided emergency services to Cigna members; (2) "Cigna's acceptance of the benefit was plainly voluntary, as it has voluntarily sold health insurance policies providing coverage for emergency care"; and (3) because Cigna received a benefit, "Cigna's continued retention of the benefit without paying fair value would be inequitable." Resp. at 10–13.

Under Florida law, unjust enrichment and *quantum meruit* claims share the following elements: (1) "the plaintiff must have conferred a benefit on the defendant"; (2) "the defendant must have knowledge of the benefit"; (3) "the defendant must have accepted or retained the benefit conferred"; and (4) "the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (internal citations and quotation marks omitted). "As to the first element, the benefit conferred on the defendant must be a direct benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). In evaluating any benefit that flows from a healthcare provider to an insured's insurer, while some courts have held differently, the weight of authority in this district holds that claims for unjust enrichment and *quantum meruit* fail to satisfy the first element. *See*, *e.g.*, *GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV-MORENO, 2019 WL 6130825, at *7 (S.D. Fla. Nov. 19, 2019) ("[A]ny benefit conferred on Aetna was indirect at best."); *GVB MD, LLC v. United Heathcare Ins. Co.*, No. 19-20727-Civ-WILLIAMS/TORRES, 2019 WL 3409183, at *8 (S.D. Fla. May 9, 2019), *report and recommendation adopted*, 2019 WL 3408925 (S.D. Fla. May 28, 2019) (finding the only direct benefit conferred by the healthcare provider was conferred upon the insured, not the insurer); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("HPC can hardly be said to have conferred any benefit,

even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with healthcare services.").

Plaintiff again relies on *Florida Emergency Physicians*, in which the Court found a split of authority among courts in the Southern and Middle Districts of Florida as to whether an insurer receives a direct benefit by virtue of its insured receiving medical treatment. *See Fla. Emergency Physicians*, 0:20-cv-60757-WPD (ECF No. 68) at 29. In *Florida Emergency Physicians*, the Court opted to "follow recent decisions" in both the Southern and Middle Districts of Florida, citing to one such case in each respective district, and not including those other recent decisions holding otherwise and cited above. *See id.* The Court agrees with the weight of authority cited above from the Southern District of Florida that any benefit the Hospitals conferred upon Cigna, in providing Cigna Members with emergency and non-emergency medical services, is indirect at best. The direct beneficiaries of such medical services are the Cigna Members themselves.

Accordingly, because Plaintiffs fail to satisfy the first element required to maintain unjust enrichment and *quantum meruit* claims, Counts II, III, V, and VI must be dismissed with prejudice.

### C. Promissory Estoppel Claim

Defendant argues that Plaintiffs' promissory estoppel claim (Count IV) fails because (1) "Plaintiffs do not allege that Cigna affirmatively promised to pay for any of [the] services, much less at any particular rate"; (2) "Plaintiffs do not allege that Cigna promised to pay the specific rate they now seek"; and (3) "Plaintiffs fail to specifically allege what Cigna actually promised, the date of the promise, who at Cigna made the promise, and who accepted the promise." Mot. at 11–14. Plaintiffs argue that when Cigna "affirmatively authorized" or "represented that the services were covered and pre-authorization was not required for the services requested," Cigna was aware that "the Hospitals expected to be paid a fair market rate" and therefore "Cigna

impliedly represented that the Hospitals would be reimbursed for the fair market value of the services." Resp. at 14–16.

"Under Florida law, the elements of promissory estoppel are: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, No. 9:18-CV-81761-ROSENBERG/REIHNART, 2020 WL 3547047, at *8 (S.D. Fla. June 30, 2020) (quoting *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. Dist. Ct. App. 2005)) (internal quotation marks omitted). "The promise must be definite and the reliance upon it reasonable." *Id.* (quoting *Peacock Med. Lab, LLC v. Unitedhealth Grp., Inc.*, No. 14-81271-CV-HURLEY/HOPKINS, 2015 WL 5118122, at *5 (S.D. Fla. Sept. 1, 2015)) (internal quotation marks omitted).

Here, Plaintiffs acknowledge that courts in this district have held "that a verification of coverage, without more, is not a promise to pay a certain rate to support a promissory estoppel claim." Resp. at 15 n.13 (citing *Chiron Recovery Ctr.*, 2020 WL 3547047, at *8; *GVB MD*, 2019 WL 6130825, at *9). However, Plaintiffs argue that "the Hospitals have alleged more"; specifically, "that a well-established course of dealing whereby Cigna would routinely reimburse claims at a fair market rate of at least 75% of billed charges created conditions under which the Hospitals reasonably understood Cigna's representations to mean that it would pay those rates for the Non-Emergent Claims" and "Cigna was aware that the Hospitals would interpret its representations as such when it made them." However, Plaintiffs' reliance on the course of dealing under the terms of an expired contract is unpersuasive. *See Crmsuite Corp. v. Gen. Motors Co.*, No. 8:20-cv-762-T-02-WFJ-AAS, 2020 WL 5898970, at *9 (M.D. Fla. Oct. 5, 2020) (quoting *Bell*

12

*Atl. Corp.*, 550 U.S. at 555) (dismissing a promissory estoppel claim where the plaintiff "made an inference based on conduct, not a promise, [which] does not 'raise a right to relief above [a] speculative level'"); *see also Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1043 (11th Cir. 1995) (finding that the parties' previous course of dealing carried no implicit promise). If the Court were to find that the terms of the expired contract—specifically that Cigna would pay the Hospitals 75% of the Hospitals' billed charges for out-of-network services—formed a basis for Plaintiffs' promissory estoppel claim, then presumably any term of the expired contract could continue to apply and Plaintiffs could be entitled to any agreements made therein, receiving the full benefit of the bargain of the expired contract to Cigna's detriment.

In the absence of any specific or definitive promise to pay, Plaintiffs' promissory estoppel claim must be dismissed with prejudice. *See Chiron Recovery Ctr.*, 2020 WL 3547047, at *8 (dismissing promissory estoppel claims with prejudice where the plaintiff relied on insurance verification procedures and "failed to allege any specific, definite promise" made by the defendant).

    **D.**    **Declaratory Judgment Claim**

Defendant argues that Plaintiffs' request for declaratory judgment should be dismissed because (1) a declaration that Cigna must pay for all future emergency services at fair market value does not comport with Florida law, which requires reimbursement for emergency services at *the lesser of*: (a) the provider's charges, (b) the usual and customary provider charges for similar services in the community where the services were provided; or (c) the charge mutually agreed to by the health maintenance organization and the provider; (2) it requires the Court "to conduct a fact intensive, case-by-case assessment of each service provided and the corresponding fair market value for similar services, which is bound to change over time"; and (3) because "Plaintiffs treat

13

certain Cigna members on an in-network basis" and the declaratory judgment claim is not limited to out-of-network claims like the other causes of action here, the Court is "forced to infer what declarations are sought." Mot. at 14–16 (internal citations and quotation marks omitted). Plaintiffs argue that (1) "[i]t should go without saying that in no conceivable circumstance would the Hospitals ever bring suit challenging a reimbursement at their full billed charges or at a rate to which the Hospitals had already agreed" and therefore "the declaratory judgment sought would apply only to future claims—like the Emergent Claims in this case—for which Cigna is required to pay U&C"; (2) the Hospitals do not ask the Court to "declare the fair market value for each and every hypothetical future claim," but rather "they seek a declaration establishing the basic methodology that Cigna must employ in calculating fair market value"; and (3) the declaratory relief sought "would govern out-of-network rate calculations only" in line with the underlying statutes. Resp. at 16–19.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)) (internal quotation marks omitted). The Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Id.* (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). "[A] declaratory relief claim that seeks a *general* declaration of rights and obligations is not sufficient to survive a motion to dismiss." *GVB MD*, 2019 WL 6130825, at *10 (citing *Bencomo Enters. v.*

14

*United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1406 (S.D. Fla. 2018)) (emphasis added).  "To survive dismissal, the Complaint must at minimum seek declarations with some level of specificity."  *Id.*  (dismissing a declaratory relief claim and finding that the declaration of rights sought "would require a case-by-case assessment" to resolve the plaintiff's "doubt as to its rights to receive benefits under numerous insurance plans, each of which likely has different terms and conditions of coverage, concerning services provided to different patients with different diagnoses").

Here, Plaintiffs ask the Court to determine the "proper methodology for calculating the fair market value of emergency services rendered, an issue on which the Hospitals will present evidence including expert testimony," Am. Compl. ¶ 82, which is an inherently overbroad request.  Plaintiffs argue that "they have not requested that the Court declare the fair market value of each and every hypothetical future claim (obviously, an impossible task)" but rather that they "seek a declaration establishing the basic methodology that Cigna must employ in calculating fair market value."  Resp. at 23.  However, as pled, the Court cannot determine that this will not require a fact-intensive, case-by-case assessment to include the types of services provided and patient-specific factors such as age, medical diagnosis, and treatment history.  Interpreting what the Florida legislature meant by "usual and customary" and declaring that a specific methodology be used by Cigna in all circumstances is not the appropriate function of this Court.  *See State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244, 1246 (Fla. Dist. Ct. App. 2002) (reversing the trial court's declaratory judgment and finding that, specifically as to the definition of "reasonable" as provided in the relevant Florida statute, "[i]f the legislature has chosen not to define the term 'reasonable,' it is not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute.  The fact-finder must

15

construe the word 'reasonable' and determine whether the insurance company's evaluation of medical bills fits the definition on a case-by-case basis."). Here, Plaintiffs ask the Court to make a sweeping declaration as to what the Florida legislature meant by "usual and customary," and thus the methodology that should be used to establish the fair market value of an undetermined number of emergency services provided by Hospitals. The Court will not use the Declaratory Judgment Act to broadly prescribe the methodology that should be used to determine the fair market value of emergency services under § 641.513(5).

Accordingly, Plaintiffs' declaratory judgment claim is dismissed with prejudice.

## IV. CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (ECF No. 25) is GRANTED. Count I of Plaintiffs' Amended Complaint is DISMISSED WITHOUT PREJUDICE, and Counts II, III, IV, V, and VI are DISMISSED WITH PREJUDICE.[2] Plaintiffs are granted leave to file a second amended complaint within twenty-one (21) days of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this  10th  day of May, 2021.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record

---

[2] "Although a district court 'should freely give leave [to amend] when justice so requires,' Fed. R. Civ. P. 15(a)(2), it may deny leave, *sua sponte* or on motion, if amendment would be futile." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). "A district court may find futility if a prerequisite to relief 'is belied by the facts alleged in [the] complaint.'" *Id.* (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015)).