# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

NORTH SHORE MEDICAL CENTER, INC., )
LIFEMARK HOSPITALS OF FLORIDA, INC. )
d/b/a PALMETTO GENERAL HOSPITAL, )   CASE NO.: 1:20-cv-24914-KMM
DELRAY MEDICAL CENTER, INC., GOOD )
SAMARITAN MEDICAL CENTER, INC., )
PALM BEACH GARDENS COMMUNITY )   JURY TRIAL DEMANDED
HOSPITAL, INC. d/b/a/ PALM BEACH )
GARDENS MEDICAL CENTER, ST. MARY'S )
MEDICAL CENTER, INC., and WEST )
BOCA MEDICAL CENTER, INC., )
                                                                    )
                                    Plaintiffs, )
                                                                    )
v.                                                              )
                                                                    )
CIGNA LIFE & HEALTH INSURANCE )
COMPANY, )
                                                                    )
                                    Defendant. )
_____ )

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>ON CIGNA'S AFFIRMATIVE DEFENSES</u>**

Plaintiffs North Shore Medical Center, Inc., Lifemark Hospitals of Florida, Inc. d/b/a Palmetto General Hospital, Delray Medical Center, Inc., Good Samaritan Medical Center, Inc., Palm Beach Gardens Community Hospital, Inc. d/b/a Palm Beach Gardens Medical Center, St. Mary's Medical Center, Inc., West Boca Medical Center, Inc., and CGH Hospitals, Ltd. d/b/a Coral Gables Hospital (collectively, the "Hospitals") respectfully submit this Motion for Partial Summary Judgment on Cigna's Affirmative Defenses ("Motion") and state as follows:

## PRELIMINARY STATEMENT

This case presents a straightforward dispute over medical reimbursement amounts. The Plaintiffs are hospitals in South Florida. Cigna is a health insurance company. The Hospitals do not participate in Cigna's provider network, but they have nonetheless treated Cigna's members who have presented for treatment at their emergency departments. Florida law requires insurers to reimburse medical providers for emergent care rendered on an out-of-network basis at amounts equaling the usual and customary provider charges for similar services in the community. Cigna has not done so. Instead, it has adopted a methodology for calculating reimbursement amounts that systematically results in payments substantially below the usual and customary charges. In so doing, it has violated Florida law. In this action, the Hospitals seek to recover the difference between the amounts Cigna actually paid and the amounts it was required to pay.

Seeking to absolve itself of liability for violating the Florida emergency care statutes, Cigna has asserted a series of affirmative defenses. In this Motion, the Hospitals seek summary judgment on a number of those defenses. As shown in Point I, Cigna cannot contend that its underpayments are consistent with Florida law, because the record shows beyond genuine dispute that Cigna utilized a methodology at odds with the law. As shown in Point II.A, Cigna cannot contend that the Hospitals failed to mitigate their damages, because the Hospitals are not legally permitted to

1

deny care to Cigna's members or to balance bill those members. As shown in Point II.B, Cigna cannot contend that the relevant patients did not require emergency treatment, because there is no evidence in the record to suggest as much. As shown in Point III, Cigna cannot contend that the Hospitals' billed charges are unreasonable, because there is no evidence suggesting the charges are unreasonable. As shown in Point IV, Cigna cannot contend that it is entitled to a set off for the portion of the damages amounting to patient responsibility, because it has adduced no evidence quantifying such patient responsibility. Finally, Cigna cannot seek recovery of its attorneys' fees, because it has pointed to no statute or contract that would allow such recovery.

## BACKGROUND

A fulsome statement of the relevant facts is presented in the Hospitals' Statement of Material Facts ("SOF"), submitted in conjunction with this Motion. Here, the Hospitals provide some general background information.

Plaintiffs are eight affiliated hospitals in South Florida. Each Hospital maintains an emergency department that renders emergency medical care to patients. (SOF ¶ 1.) Florida law requires the Hospitals to render emergent care to all patients who present in the emergency department, regardless of the patients' insurance status or ability to pay. (SOF ¶ 4.) Defendant Cigna Health & Life Insurance Company ("Cigna") is a national health insurer. (SOF ¶ 2.) In exchange for premiums and/or other compensation from its members, Cigna assumes the responsibility to pay for covered healthcare services provided to those members.[1] Among Cigna's product offerings are health insurance policies sold to individuals in Florida on the Affordable Care Act exchange ("Exchange"). (SOF ¶ 2.) These Exchange policies offer commercial insurance underwritten and administered by Cigna. (SOF ¶ 2.)

---

[1] Cigna's "members" are individuals holding insurance underwritten and administered by Cigna.

Florida law requires Cigna to offer coverage for emergency care rendered to its members, regardless of whether the medical provider performing the emergency services participates in Cigna's provider network.[2] (SOF ¶ 6.) Further, where an insured patient receives emergency care from a non-participating provider, Florida law requires the patient's health insurer to reimburse the provider at a rate equaling the lesser of (a) the provider's billed charges, (b) the usual and customary provider charges for similar services in the community where the services were provided ("U&C"), or (c) the charge mutually agreed upon by the provider and insurer. (SOF ¶ 7 (citing Fla. Stat. §§ 641.513(5), 627.64194(4)).)

Each of the Hospitals is a non-participating provider with Cigna.[3] (SOF ¶ 2.) Nonetheless, the Hospitals have provided, and continue to provide, emergency care to Cigna members who present for treatment in the emergency department. And because (1) the parties have not mutually agreed upon any charges, and (2) there is no dispute that U&C is less than the Hospitals' billed charges, the Florida statutes obligate Cigna to pay U&C. (SOF ¶¶ 7, 39.) Moreover, Florida law defines U&C as the "fair market value of the services provided." *Baker Cty. Med. Servs., Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010). And the Hospitals allege that Cigna has violated Florida law by reimbursing them at rates below fair market value. In other words, the primary contested factual issue in this action is the fair market value of the emergency

---

[2] A provider is "non-participating" or "out-of-network" where there is no express, written agreement governing the rates at which the insurer will reimburse the provider for medical services rendered to the insurer's members. (SOF ¶ 3.)

[3] Cigna offers multiple different health insurance products in the South Florida market. The Hospitals participate in the network for some of these products, but not others. The claims for reimbursement at issue here all involve services rendered to Cigna members enrolled in health insurance plans or products in which the Hospitals do not participate.

medical services rendered to Cigna's members. If fair market value is more than the amounts paid by Cigna, then, per Florida statute, Cigna is liable for the difference.

## ARGUMENT

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). Once the moving party has satisfied that burden by presenting evidence that would entitle it to a directed verdict at trial, the burden shifts to the non-moving party to present specific facts demonstrating a genuine dispute. *Id.* Where the nonmoving party bears the burden of proof at trial—as is the case with respect to Cigna's affirmative defenses[4]—the moving party is "not required to 'support its motion with affidavits or other similar material negating the opponent's claim,' [but] simply may . . . point[] out to the district court [] that there is an absence of evidence to support the non-moving party's case." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

---

[4] "[T]he defendant bears the burden of proving an affirmative defense." *Donawa v. United States AG*, 735 F.3d 1275, 1282 (11th Cir. 2013).

## I. THE HOSPITALS ARE ENTITLED TO SUMMARY JUDGMENT ON CIGNA'S SEVENTH AFFIRMATIVE DEFENSE

In its seventh affirmative defense, Cigna pleads that the Hospitals' claims "are barred in whole or in part on the ground that [Cigna's] alleged conduct and adjudication of claims was in accordance with the terms of the applicable plan and policy documents and Florida law." (Answer to Third Amended Complaint ("TAC"), ECF No. 124 at 14.) The Court should grant summary judgment on this defense in favor of the Hospitals because (1) Cigna is obligated to comply with Florida statutes irrespective of what the applicable plan and policy documents happen to say, and (2) the record evidence demonstrates beyond genuine dispute that Cigna did not comply with Florida law in calculating its reimbursement rates.

The Hospitals do not allege breaches of any of the relevant plan or policy documents. As is plain in the TAC, the Hospitals allege violations of Florida Statutes §§ 641.513(5) and 627.64194(4). And it should go without saying that the plan terms cannot supersede the statutes. In fact, Cigna has conceded that it is obligated to comply with the statutes. (SOF ¶¶ 7, 35-37.) Accordingly, the seventh affirmative defense hinges exclusively on whether Cigna can prove that it complied with Florida law. And, as shown below, there is no genuine dispute that Cigna has not only violated Florida law, it has done so knowingly.

Under Florida's emergency care statutes, Cigna is obligated to reimburse the Hospitals for emergent care rendered to Cigna's members at rates equaling U&C. Fla. Stat. §§ 641.513(5), 627.64194(4). *Baker County* is the seminal case addressing the meaning of U&C under the statutes. In that case, Florida's First District Court of Appeal explained that "[i]n the context of the statute, it is clear what is called for is the fair market value of the services provided." 31 So. 3d at 845. Further: "[f]air market value is the price that a willing buyer will pay and a willing seller will accept in an arm's-length transaction." *Id.* In other words, the statutes require payment

5

of fair market value, as measured by the price to which willing parties in the relevant community would agree in a hypothetical arm's length transaction. Cigna concedes as much. (ECF No. 33 at 6.) Yet the record demonstrates beyond genuine dispute that Cigna, in calculating its reimbursement amounts, made no effort to actually determine fair market value.

███████ ██████ ████████████ █ █████████ ███ ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████ Numerous courts have recognized as much. *See, e.g., HCA Health Servs. of Ga. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 999 n.33 (11th Cir. 2001), *implied overruling on other grounds recognized by Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1359 (11th Cir. 2008) ("[g]iven what is usual and customary in the managed care industry, we cannot imagine that even a poorly represented entity would promise to discount its fees in return for nothing."); *Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 930 (10th Cir. 2006) ("[I]nterpreting a 'customary' charge in the medical market as synonymous with the discounted rate negotiated by a health plan with its preferred providers is a significant deviation from industry custom.").

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████ GoT is an Affordable Care Act regulation that requires a payer reimbursing an out-of-network emergency provider to pay the greatest of: (1) the payer's median in-network rate for the identical service; (2) the amount calculated using the relevant health plan's formula for calculating out-of-network reimbursements (if any); and (3) the applicable Medicare fee-for-service rate.[5]  45 C.F.R. § 147.138(b)(3)(i). ███████████████████████

███████████ First, GoT—by its own terms—does not apply in States whose state law prohibits balance billing of patients.  (SOF ¶¶ 35 n*7, 37-38.)  Florida is one such State.  *See* Fla. Stat. § 627.64194(2).  Second, even if GoT did govern in Florida (which it does not), Cigna's compliance with federal law would not absolve it of the obligation to also comply with state law.  That is critical because, while GoT sets a federally mandated floor for out-of-network emergency reimbursement amounts, the regulation permits the States to establish higher floors (which Florida did in enacting §§ 641.513(5) and 627.64194(4)).  (SOF ¶¶ 35, 37-38.)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████[*] ██████

---

███████████████████████

[*] ████████████████████████████████████████
████████████████████████████████

[*] ████████████████████████████████████████
████████████████████████

██████████████████████████████████████████████████████████

████████      ██████████████████████████████████      ██████████████████

███████████████████████████████████████████████████

████████████████████████████████████████      █████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████  That is a plain, knowing violation of Florida law.

      ████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████  Section 641.513(5) provides that U&C is "the usual and customary provider charges for similar services *in the community where the services were provided*" (emphasis added).  Here, it is undisputed that because the Hospitals are located exclusively in Miami-Dade and Palm Beach Counties, the community for purposes of the statute is South Florida.  ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████    ██████████████████████████    ████████████    ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

      ████████  Given the plain text of the statute, that approach is indefensible.

Accordingly, there is no genuine dispute that Cigna calculated its reimbursements according to a methodology inconsistent with Florida law. Therefore, the Court should grant summary judgment in favor of the Hospitals on Cigna's seventh affirmative defense.

## II. THE HOSPITALS ARE ENTITLED TO SUMMARY JUDGMENT ON CIGNA'S SECOND AND TENTH AFFIRMATIVE DEFENSES

### A. The Hospitals Are Unable to Mitigate Damages

In its second affirmative defense, Cigna pleads that "Plaintiffs failed to mitigate any and all damages or losses claimed by them." (Answer to TAC, ECF No. 124 at 14.) The Court should grant summary judgment to the Hospitals on this defense because, given the applicable statutory mandates, there is nothing the Hospitals could have done to mitigate their damages.

Under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), hospitals with emergency departments are required to screen and stabilize all patients who present at the emergency department, regardless of the patients' insurance status or ability to pay for care. 42 U.S.C. § 1395dd. Florida law goes even further. It requires all hospitals with emergency departments to "provide emergency services and care for any emergency when: (1) any person requests emergency services and care; or (2) [e]mergency services and care are requested on behalf of a person" by an emergency medical provider or another hospital.[7] Fla. Stat. § 395.1041(3)(a). Accordingly, the Hospitals were and are unable to deny emergency care to Cigna's members, even knowing full well that Cigna would refuse to pay appropriate rates of reimbursement.

Moreover, the Hospitals are unable to seek recovery of the difference between Cigna's allowed amounts and U&C from the patients themselves, because Florida law prohibits balance

---

[7] As explained in Part II.B below, "emergency services and care" under Florida law—*i.e.*, the care that must be provided to any patient who presents at the emergency department—is more comprehensive than that required under EMTALA.

billing of Cigna's members. Fla. Stat. § 627.64194(2). As such, there can be no genuine dispute that the Hospitals are precluded, as a matter of law, from taking action that would mitigate their damages. The Court should therefore grant summary judgment on Cigna's second affirmative defense.

### B. The Medical Services Rendered Were Emergency Services

In its tenth affirmative defense, Cigna pleads that "Plaintiffs' claims are barred in whole or in part to the extent services rendered by Plaintiffs were not provided on an emergency basis, including both at the outset of treatment and after treatment started." (Answer to TAC, ECF No. 124 at 15.) But Cigna has adduced no evidence suggesting that the services rendered were not emergency services. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The reimbursement scheme set forth in §§ 641.513(5) and 627.64194(4) applies to claims for "emergency services and care." Thus, if the Hospitals in fact rendered emergency services and care, then Cigna was obligated to calculate its reimbursement amounts according to the statutory "lesser of" formula (in effect, to pay U&C). "Emergency services and care" are statutorily defined to mean:

> [M]edical screening, examination, and evaluation by a physician or, to the extent permitted by applicable law, by other appropriate personnel under the supervision of a physician, to determine if an emergency medical condition exists and, if it does, ***the care, treatment, or surgery by a physician necessary to relieve or eliminate the emergency medical condition***, within the service capability of a hospital.

Fla. Stat. § 641.47(8) (emphasis added).

In other words, the Florida statute requires a hospital treating a patient suffering from an emergency medical condition to provide the care necessary to relieve or eliminate the condition. EMTALA, in contrast, requires only that the hospital screen and stabilize the presenting patient,

10

not that it provide treatment to relieve or eliminate the condition. 42 U.S.C. §§ 1395dd(a), (b). As such, for Cigna to prove that "services rendered by Plaintiffs were not provided on an emergency basis" under Florida law, it must show that the patients who received care from the Hospitals either were not suffering emergency medical conditions[8] in the first instance, or that the Hospitals continued to provide care after such conditions had been relieved or eliminated. Cigna can show neither.



---

[8] "Emergency medical condition" is defined as:

> A medical condition manifesting itself by acute symptoms of sufficient severity which may include severe pain or other acute symptoms, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
>
> 1. Serious jeopardy to the health of a patient, including a pregnant woman or a fetus.
>
> 2. Serious impairment to bodily functions.
>
> 3. Serious dysfunction of any bodily organ or part
>
> With respect to a pregnant woman:
>
> 1. That there is inadequate time to effect safe transfer to another hospital prior to delivery;
>
> 2. That a transfer may pose a threat to the health and safety of the patient or fetus; or
>
> 3. That there is evidence of the onset and persistence of uterine contractions or rupture of the membranes.

Fla. Stat. § 641.47(7).

Case 1:20-cv-24914-KMM Document 133 Entered on FLSD Docket 11/12/2021 Page 13 of 18



12



The distinction between treatment to stabilize a patient suffering an emergency medical condition and treatment to relieve or eliminate the condition is fatal to Cigna's affirmative defense.

███ Whereas Florida law, as opposed to federal law, defines "emergency services and care" to include care to relieve or eliminate emergency medical conditions and obligates hospitals to provide such care.

Accordingly, because there is no evidence in the record to suggest that any of the patients did not require emergency services and care as that term is defined under Florida law, Cigna has failed to raise a genuine dispute of fact on that issue. Therefore, the Court should grant summary judgment in favor of the Hospitals on Cigna's tenth affirmative defense.

### III. THE HOSPITALS ARE ENTITLED TO SUMMARY JUDGMENT ON CIGNA'S EIGHTH AND NINTH AFFIRMATIVE DEFENSES

In its eighth affirmative defense, Cigna pleads that the Hospitals' claims are barred by the doctrine of unclean hands because "Plaintiffs' charges and demanded reimbursement rates are

---

to Exclude Opinions of Defendant's Experts ("Motion to Exclude"). The arguments and authorities presented in the Motion to Exclude are adopted and incorporated by reference herein.

[11] Courts have recognized as much. *See, e.g., Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir. 1991) ("A patient may be in a critical condition, however, and still be 'stabilized' under the terms of the Act.").

unreasonable, well beyond their fair market value, and far in excess of the usual and customary rates for equivalent services in the community." (Answer to TAC, ECF No. 124 at 14.) In its ninth affirmative defense, Cigna pleads that "Plaintiffs are demanding commercially unreasonable charges and reimbursement rates far in excess of the 'usual and customary' rates for equivalent services, and thereby undermining the Florida statutes regarding reimbursement for out-of-network services." (Answer to TAC, ECF No. 124 at 14-15.) In other words, both defenses are predicated upon Cigna's argument that the Hospitals' charges are unreasonably high.

The Court should grant summary judgment in favor of the Hospitals because Cigna has adduced no evidence suggesting that the charges are unreasonably high. ███████

████████████████████████████████████████████████████

████████████████████████████████████████ In fact, Cigna's own expert, Ms. Edwards, submitted a report to another federal court in the Southern District of Texas, wherein she stated that payers such as Aetna, United Healthcare and EmblemHealth typically consider the 80th percentile to be a "reasonable" charge in out-of-network settings. (SOF ¶ 18.)

Accordingly, the Court should grant summary judgment in favor of the Hospitals on Cigna's eighth and ninth affirmative defenses.

### IV. THE HOSPITALS ARE ENTITLED TO SUMMARY JUDGMENT ON CIGNA'S ELEVENTH AFFIRMATIVE DEFENSE

In its eleventh affirmative defense, Cigna pleads that it is "entitled to a set off as to any claimed damages by the Plaintiffs that are payable by the patient as patient responsibility in the form of a deductible, co-payment, or co-insurance." (Answer to TAC, ECF No. 124 at 15.) In other words, Cigna contends that it should receive a set off for the portion of the difference between

its allowed amount and U&C that is the responsibility of the patients under their respective health plans.

Initially, because the request for a set off is an affirmative defense, Cigna bears the burden of proof. *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) ("[T]he defendant bears the burden of proof on his affirmative defenses at trial."). As such, to prevail on this defense, Cigna is required to prove the specific amount of the damages attributable to patient responsibility. The Court should grant summary judgment in favor of the Hospitals because there is no evidence in the record that would establish the amount of any patient responsibility. ███

███

███ Nor is there any other evidence in the record that would allow the jury to perform such calculation.

Accordingly, there is no genuine dispute of fact, and the Hospitals are entitled to summary judgment.

## V.  CIGNA IS NOT ENTITLED TO RECOVER ITS ATTORNEYS' FEES

In its prayer for relief, Cigna seeks recovery of its attorneys' fees. (Answer to TAC, ECF No. 124 at 12.) But Cigna has identified no statute, contract, or other source that would entitle it to such recovery. *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) ("Generally . . . a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties."). Accordingly, the Court should grant summary judgment in favor of the Hospitals on Cigna's request to recover its fees.

## CONCLUSION

For all of the foregoing reasons, the Motion should be granted.

Dated: November 12, 2021

                    Respectfully Submitted,

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida 33131
Tel: 305-347-4040/Fax: 305-347-4050

By: /s/ Jonathan E. Siegelaub
     Alan D. Lash
     Florida Bar No. 510904
     alash@lashgoldberg.com
     Justin C. Fineberg
     Florida Bar No. 0053716
     jfineberg@lashgoldberg.com
     Greg J. Weintraub
     Florida Bar No. 75741
     gweintraub@lashgoldberg.com
     Emily L. Pincow
     Florida Bar No. 1010370
     epincow@lashgoldberg.com
     Jonathan E. Siegelaub
     Florida Bar No. 1019121
     jsiegelaub@lashgoldberg.com
     William E. Baldwin
     Florida Bar No. 118072
     wbaldwin@lashgoldberg.com
     Ashley P. Singrossi
     Florida Bar No. 1010132
     asingrossi@lashgoldberg.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **November 12, 2021** a copy of the foregoing was electronically filed with the Clerk of Court by using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record:

>  */s/ Jonathan E. Siegelaub*_____
> **Jonathan E. Siegelaub**